UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHARON VIEHDEFFER,

                                        Plaintiff,

        v.                                                              **DECISION AND ORDER**
                                                                        12-CV-23S

TODD TRYON as Supervisory Detention and
Deportation Officer at the Buffalo Federal
Detention Center; JISUAN KIM as Contracting
Officer at the Buffalo Federal Detention
Center; JANET NAPOLITANO as the United
States Secretary of Homeland Security;
UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT; and VALLEY
METRO-BARBOSA GROUP,

                                        Defendants.

## I.  INTRODUCTION

        Plaintiff, Sharon Viehdeffer, commenced this action seeking damages and injunctive

relief for the alleged deprivation of property without due process of law in violation of the

Fifth Amendment and for alleged state tort claims.   Presently before this Court is the

motion to dismiss and/or for summary judgment of Defendants Todd Tryon, Jisuan Kim,

Secretary Janet Napolitano, and U.S. Immigration and Customs Enforcement ("ICE").

(Docket No. 14.) Also before this Court is the motion of Defendant Valley Metro-Barbosa

Group ("Valley Metro") for judgment on the pleadings and for summary judgment

dismissing the complaint. (Docket No. 23.) The Court has considered the submissions and

finds oral argument unnecessary. For the reasons that follow, both motions are granted.

1

## II. BACKGROUND

As alleged in her complaint, Plaintiff was previously employed by Valley Metro as a detention officer at the Buffalo Federal Detention Center.  (Compl. ¶ 11, Docket No. 1.) Plaintiff was a member of the Service Employees International Union, Local 200 United ("Union"), and pursuant to the applicable collective bargaining agreement ("CBA"), her employment with Valley Metro could only be terminated for just cause. (Compl. ¶ 12.)  On October 9, 2010, Plaintiff "was given an appearance ticket . . . [but] was not otherwise charged with second degree harassment or any other misdemeanor or felony" for a non-work related incident. (Compl. ¶ 16; see Aff. of Plaintiff Sharon Viehdeffer ¶ 15, Docket No. 24-1.)  Plaintiff alleges that in May or June 2011, Valley Metro transmitted information to ICE "falsely alleging that she had been arrested, had committed criminal harassment, and or failed to report an incident to Valley Metro and/or ICE." (Compl. ¶ 14.)

After the allegations of misconduct were reported by Valley Metro, Defendant Jisuan Kim, a contracting officer for ICE at the Buffalo Federal Detention Center, informed Valley Metro by letter dated June 14, 2011, that it was "necessary that [Plaintiff] be permanently removed from working on this or any other ICE contract." (Compl. ¶¶ 9, 15, Ex. A.)  Kim stated:

> Pursuant to an internal ICE investigation, it became known that [Plaintiff] was arrested by local law enforcement for harassment 2nd on October 9, 2010. [Plaintiff] failed to report the arrest to either Valley Metro[] management or ICE.  Failure to report the arrest is a violation of the contract Performance Work Statement.

(Compl. Ex. A.) Kim further noted that Plaintiff concealed this information for over nine months, and that she denied the arrest when confronted with the allegations. (Compl. Ex. A.) Plaintiff was terminated from her employment by Valley Metro as a result. (Compl. ¶

2

18.)

The Union grieved Plaintiff's termination on her behalf in July 2011. (Compl. ¶ 19 Ex. B.)  Valley Metro denied the grievance on the ground that "ICE retains the sole and final authority for granting/withdrawing an employee[']s site security clearance." (Compl. ¶ 20 Ex. B.)

Plaintiff commenced the instant action in this Court on January 10, 2012, alleging six different causes of action. Specifically, Plaintiff alleges that: (1) she was deprived of her property right to continued employment without due process of law by Defendants Kim, Todd Tryon, Secretary of Homeland Security Janet Napolitano, and ICE (collectively "the Federal Defendants") in violation of the Fifth Amendment; (2) she was stigmatized by the actions of the Federal Defendants without due process and has been precluded from obtaining work in her chosen profession in violation of the Fifth Amendment; (3) Valley Metro knowingly and/or negligently or recklessly communicated false information to ICE resulting in Plaintiff's termination (defamation); (4) Valley Metro intentionally inflicted emotional distress on Plaintiff by purposely and with malice aforethought transmitting false information regarding her to ICE; (5) the Federal Defendants, collectively and/or individually, intentionally inflicted emotional distress on Plaintiff by purposely and with malice aforethought causing her employment termination; (6) and the Federal Defendants and Valley Metro negligently inflicted emotional distress on Plaintiff by failing to investigate the false allegations regarding Plaintiff.

## III.  DISCUSSION

### A.    Lack of Subject Matter Jurisdiction against the Federal Defendants[1]

The Federal Defendants contend that the state law tort claims asserted against them, specifically the fifth and sixth causes of action for the intentional and negligent infliction of emotional distress,[2] must be dismissed because, pursuant to the Federal Tort Claims Act ("FTCA"), these claims cannot be maintained against either a federal agency or a federal employee acting within the scope of his or her employment.  See 28 U.S.C. § 2679 (a),(b)(1); (Fed. Def's Mem. of Law at 5-6, Docket No. 18.) Plaintiff, as the party asserting jurisdiction, has the burden of affirmatively showing by a preponderance of the evidence that subject matter jurisdiction exists, and such a showing "is not made by drawing from the pleadings inferences favorable to [Plaintiff]." APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (citation and internal quotation marks omitted); see Hamm v. United States, 483 F.3d 135, 137 (2d Cir. 2007); Luckett v. Bure, 290 F.3d 493, 496-497 (2d Cir. 2002).  She has failed, however, to offer any opposition to the Federal Defendants' arguments on this point, nor has she requested that the United States be substituted as the appropriate party.  It is therefore appropriate to consider the fifth and sixth causes of action abandoned as against the Federal Defendants.  Anwar v. Fairfield Greenwich Ltd.,

---

[1]In support of their motion (Docket No. 14), the Federal Defendants submitted a Statement of Facts (Docket No. 15), the Declaration of Scott A. Whitted (Docket No. 16), the Declaration of Defendant Todd Tryon with Exs. 1-3 (Docket No. 17), and a supporting Memorandum of Law (Docket No. 18). Plaintiff responded with an opposing Memorandum of Law, the Affidavit of Plaintiff Sharon Viehdeffer with Exs. A-H, and a Statement of Disputed Facts (Docket No. 24).  The Federal Defendants filed a reply Memorandum of Law (Docket No. 25).

[2]The Federal Defendants contend that all four tort claims must be dismissed as against them, however, only the fifth and sixth causes of action implicate these defendants.  Nonetheless, this analysis equally applies to all tort claims in the Complaint.

826 F.Supp.2d 578, 583 (S.D.N.Y. 2011).

In any event, the Federal Defendants have established that subject matter jurisdiction does not exist with respect to the tort claims asserted against them. "The FTCA's purpose is both to allow recovery by people injured by federal employees or by agents of the Federal Government, and, at the same time, to immunize such employees and agents from liability for negligent or wrongful acts done in the scope of their employment." Celestine v. Mount Vernon Neighborhood Health Ctr., 403 F.3d 76, 80 (2d Cir. 2005). This Act therefore provides that the exclusive remedy for causes of action based upon such negligent or wrongful acts is an action against the United States, not the individual employee. Rivera v. United States, 928 F.2d 592, 608 (2d Cir. 1991); De Masi v. Schumer, 608 F.Supp.2d 516, 520 (S.D.N.Y. 2009). Here, Plaintiff has failed to allege in her complaint that any of the Federal Defendants were acting outside the scope of his or her employment, nor is there any evidence in the record from which to infer that fact. Therefore the fifth and sixth causes of action must be dismissed as against them. See Sitka v. United States, 903 F.Supp. 282, 284-285 (D. Conn. 1995). Similarly, ICE, as a federal agency, is also not an appropriate defendant under FTCA. 28 USC § 2679 (a).

Moreover, there is no reason to substitute the United States as the appropriate party. See 28 U.S.C. § 2679(d)(2)(upon certification that a federal employee was acting within the scope of employment, the action "shall be deemed an action against the United States"). These claims would ultimately fail even if they had been properly asserted against the United States under the FTCA, as this act requires that any claimant first file an administrative claim with the appropriate agency prior to commencing a lawsuit. 28 U.S.C. § 2675 (a); Keene Corp. v. United States, 700 F.2d 836, 841 (2d Cir. 1983), *cert denied*

5

464 U.S. 864 (1983). This requirement is jurisdictional and cannot be waived. Keene

Corp., 700 F.2d at 840; Mele v. Hill Health Ctr., 609 F.Supp.2d 248, 257 (D. Conn. 2009).

Plaintiff has neither alleged in her complaint nor argued in opposition that she previously

filed a claim with the Department of Homeland Security. Further, the Federal Defendants

submitted the Declaration of Scott A. Whitted, Deputy Chief of ICE's District Court

Litigation Division, who asserted that a search of the relevant records revealed no claim

by or on behalf of Plaintiff. (Docket No. 16 ¶¶ 1-2); see Zappia Middle East Const. Co. v.

Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000)(a court may look outside the

pleadings to resolve a factual challenge to subject matter jurisdiction). Although Plaintiff

submitted evidence that she received a response letter from Secretary Napolitano's office,

this letter merely acknowledges the receipt by DHS of an October 3, 2011 letter from

Plaintiff and asserts that it was referred to the ICE office of Professional Responsibility. (Pl.

Aff. Ex H.) Thus, even if this letter constituted a claim, there was no final determination

issued and less than six months had passed from the filing to the time Plaintiff commenced

this action in January 2012. See 28 U.S.C. § 2675(a)(an agency's failure to make a final

disposition on a claim within six months after filing shall, at a claimant's option, be deemed

a denial). There is also no indication in either the "draft" letter that Plaintiff asserts she

submitted to Secretary Napolitano or in the DHS response that Plaintiff requested a sum

certain, a requirement for an administrative claim. Estate of George v. Veteran's Admin.

Med. Ctr., 821 F.Supp.2d 573, 577 (W.D.N.Y. 2011); (Pl. Aff. Exs. G, H.) This Court is

therefore without jurisdiction to consider the merits of the fifth and sixth causes of action

as asserted against the Federal Defendants. Mele, 609 F.Supp.2d at 257.

The Federal Defendants also correctly argue that this Court lacks subject matter

jurisdiction over the first and second causes of action insofar as Plaintiff seeks relief pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against ICE.  (Def's Mem. of Law at 8-9).  Plaintiff cannot assert a Bivens claim against a federal agency. F.D.I.C. v. Meyer, 510 U.S. 471, 484-486, 114 S.Ct. 996, 127 L.Ed.308 (1994); Swchweitzer v. Dept. of Veterans Affairs, 23 Fed. Appx. 57, 59 (2d Cir. 2001), cert denied 535 U.S. 955 (2002).  The first and second causes of action must also be dismissed against ICE.

**B.     Failure to State a *Bivens* Claim against the Federal Defendants**

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12 (b)(6), a court must accept all factual allegations in the complaint as true and make all reasonable inferences in a plaintiff's favor.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).  In order to survive such a motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); ATSI Commc'ns, Inc., 493 F.3d at 98. This assumption of truth applies only to factual allegations and is inapplicable to legal conclusions.  Iqbal, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  In making its determination, a court is entitled to consider, as relevant here:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3)

documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

In re Merrill Lynch & Co., Inc., 273 F.Supp.2d 351, 356-357 (S.D.N.Y. 2003)(citations omitted), aff'd 396 F.3d 161 (2d Cir. 2005), cert denied 546 U.S. 935 (2005); see Weiss v. Inc. Vill. of Sag Harbor,  762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011).

### i.   Secretary Napolitano

The Federal Defendants contend that the first and second causes of action, alleging a Bivens claim for the violation of Fifth Amendment procedural due process, must be dismissed against Secretary Napolitano for failure to state a claim pursuant to Rule 12 (b)(6).  (Fed. Def's Mem. of Law at 10-12.) In order to state a valid Bivens claim, it must be alleged in the complaint that each defendant was personally involved in the deprivation of constitutional rights.  Thomas v. Ashcroft, 470 F.3d 491, 496-497 (2d Cir. 2006).  Here, as the Federal Defendants argue, Plaintiff failed to make any specific allegation in her Complaint that Secretary Napolitano had knowledge of or personal involvement in the circumstances surrounding Plaintiff's termination of employment.  Plaintiff argues that her October 3, 2011 letter to Secretary Napolitano and the response she received from that office establish this Defendant's personal involvement.  (Pl's Mem. of Law in Opp'n at 5-6; Pl. Aff. ¶ 26 Ex. G, H.)  No reference to these letters is found in the complaint, therefore it cannot be concluded that the letters were "relied upon in it." In re Merrill Lynch & Co., Inc., 273 F.Supp.2d at 356-357.  The first and second causes of action are therefore dismissed as against Secretary Napolitano for failure to state a claim pursuant to Rule 12(b)(6).

Further, there is no reason to provide Plaintiff an opportunity to amend the complaint.  Plaintiff argues that the letters described above establish that Secretary Napolitano had personal knowledge of the circumstances of Plaintiff's termination and failed to act.  (Pl's Mem. of Law in Opp'n at 5-6.)  The evidence submitted by Plaintiff, however, indicates that Plaintiff addressed a letter to President Barack Obama that was received by ICE. (Pl's Aff ¶ 26, Ex. G, H.)  The response sent by an ICE executive secretary indicates that Plaintiff's letter "was promptly referred to the ICE Office of Professional Responsibility for appropriate action." (Pl's Aff ¶ 26, Ex. H.)  There is nothing from which to infer that Secretary Napolitano ever personally saw Plaintiff's letter or that she was otherwise aware of Plaintiff's termination.  Permitting Plaintiff to file an amended complaint would therefore be futile. Dougherty v. Town of North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002)(amendment is futile if it would fail to withstand motion to dismiss).

ii.   Stigma-Plus Claim

In her second cause of action, Plaintiff alleges that she was stigmatized by the actions of the Federal Defendants, and has thereby been precluded from work in her chosen profession without due process in violation of the Fifth Amendment.  (Compl. ¶ 30.) "Such an action is referred to as a stigma-plus claim; it involves an 'injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus), without adequate process.' " Segal v. City of New York, 459 F.3d 207, 212 (2d Cir. 2006) (quoting DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir.2003)), cert denied 541 U.S. 988 (2004).  In order to state a stigma-plus Bivens claim, Plaintiff is required to show that (1) a government employee made stigmatizing statements about Plaintiff that

9

call into question her good name, reputation, honor, or integrity; (2) the stigmatizing statements were made public; and (3) the stigmatizing statements were made either concurrently with or in close temporal proximity to Plaintiff's dismissal. Segal, 459 F.3d at 212-213.

The Federal Defendants argue that Plaintiff cannot state a stigma-plus claim because the statements at issue were never made public, but were instead merely communicated to Valley Metro. (Fed. Def.'s Mem. of Law at 24-25.) Plaintiff responds that Defendant Kim's June 14, 2011 letter to Valley Metro is sufficient to establish the requirements of a stigma-plus claim. (Pl's Mem of Law in Opp'n at 12-13.) There is no allegation in the complaint that this letter, although referenced in and attached as an exhibit to the complaint, see In re Merrill Lynch & Co., Inc., 273 F.Supp.2d at 356-357, was disseminated to anyone other than Valley Metro, Plaintiff's employer and the entity that had informed ICE of the alleged arrest in the first place. (Compl. ¶ 14.) See Brevot v. New York City Dept. of Educ., 299 Fed. Appx. 19, 21 (2d Cir. 2008)(internally circulated letter was not sufficiently public for purposes of stigma-plus claim where the information therein was not otherwise disclosed). Further, although under certain circumstances "the placement of statements in an employee's personnel file may satisfy the contemporaneous public disclosure elements of a stigma-plus claim," Segal, 459 F.3d at 213, there is no allegation here that any challenged statements were included in a personnel file with either Valley Metro or ICE, or that prospective employers would be permitted access to any such file. See Brandt v. Bd. of Co-op. Educ. Servs., 820 F.2d 41, 45 (2d Cir. 1987)(considering whether stigmatizing charges in file were likely to be disclosed to potential employers). Plaintiff's second cause of action must therefore be dismissed for failure to state a claim.

Further, for the reasons discussed below, there is no need to provide Plaintiff an opportunity to file an amended claim.

## C.    Summary Judgment on the *Bivens* claims

The Federal Defendants also contend that they are entitled to summary judgment on the first and second causes of action pursuant to Bivens as against the remaining Federal Defendants Tryon and Kim.    Summary judgment is appropriate where the materials in the record, including depositions, documents, affidavits or declarations, and stipulations, show that there are no genuine issues regarding any material fact and that the movant is entitled to judgment as a matter of law.   see Fed.R.Civ.P. 56 (a), (c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   Anderson, 477 U.S. at 248.

The Federal Defendants argue that summary judgment is warranted because Defendants Tryon and Kim are entitled to qualified immunity.  (Fed. Def's Mem. of Law at 20-23.)  In Bivens, the Supreme Court created a judicial remedy whereby "a plaintiff may seek money damages from government officials who have violated her constitutional or statutory rights. But to ensure that fear of liability will not unduly inhibit officials in the discharge of their duties, the officials may claim qualified immunity."  Camreta v. Greene, -- U.S. --, 131 S.Ct. 2020, 2030, 179 L.Ed.2d 1118 (2011) (internal citation and quotation

marks omitted); see Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting Harlow, 457 U.S. at 818). "[Q]ualified immunity is 'an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial.' " Pearson, 555 U.S. at 231 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).

Thus, on a motion for summary judgment, the court "may determine whether the law was clearly established at the time an action occurred, thereby measuring the objective reasonableness of an official's conduct." Stein v. Bd. of the City of New York, 792 F.2d 13, 17-18 (2d Cir. 1986), cert denied 479 U.S. 984 (1986). "A right may be clearly established through Supreme Court precedent or the case law of this circuit." Dumpson v. McGinnis, 348 Fed. Appx. 658, 659 (2d Cir. 2009)(citing Russell v. Coughlin, 910 F.2d 75, 78 (2d Cir. 1990). In Saucier v. Katz, the Supreme Court established a two-step procedure for determining whether a government official was entitled to qualified immunity. 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.  Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of [a] defendant's alleged misconduct.

Pearson, 555 U.S. at 232 (quoting Saucier, 533 U.S. at 201)(internal citation omitted). The Court subsequently clarified that, although considering these issues in this sequence "is

often appropriate, it should no longer be regarded as mandatory." <u>Pearson</u>, 555 U.S. at 236.

"Where the independent source of a property interest is a private contract, the [government] cannot transgress on the claim of entitlement to continued employment without due process of law." <u>Stein</u>, 792 F.2d at 16; <u>see</u> <u>Wilson v. MVM, Inc.</u>, 475 F.3d 166, 177 (3d Cir. 2007). In opposing the motion for summary judgment, Plaintiff relies primarily on <u>Stein</u>, in which the Second Circuit affirmed the district court's determination that a bus driver had a protected property interest in continued employment where his contract with a bus transportation company precluded termination absent good cause.  792 F.2d at 17. The bus driver had been terminated from his position based upon a determination by the city board of education that his conduct fell below the good moral character standards required by the contract between the board and the bus transportation company. <u>Stein</u>, 792 F.2d at 15.  The bus driver commenced an action asserting, *inter alia*, claims pursuant to 42 U.S.C. § 1983.  <u>Id</u>.  Following a trial, the jury determined that a handwritten note with the date and time of a hearing before the board of education, given to the bus driver sometime *after* he was taken off the job, was insufficient notice of the charges against him. <u>Id</u>.

As noted, however, the Federal Defendants do not dispute that Plaintiff has a constitutionally protected interest in continued employment, but they instead argue that, at minimum, the law is uncertain as to what process Plaintiff is entitled prior to a determination precluding her from working at any ICE facility that effectively terminates her private employment.  (Def's Mem of Law at 20-23.)  "There is no rote formula for sufficient protections under the Due Process Clause.  Rather, 'due process is flexible and calls for

13

such procedural protections as the particular situations demands.' " Wilson, 475 F.3d at 178 (quoting Mathews, 424 U.S. at 334).  Generally speaking, the "fundamental requisites of due process are some kind of notice and some kind of hearing." Case v. Weinberger, 523 F.2d 602, 606 (2d Cir. 1975).

The Federal Defendants correctly point out that in Stein, the Second Circuit addressed only the propriety of the district court's pre-trial ruling on the bus driver's property interest in continued employment, and did not discuss what specific process was due to that plaintiff.  (Fed. Def's Mem. of Law at 21.)  Accordingly, the Federal Defendants point to the Third Circuit case of Wilson v. MVM, Inc., in which the plaintiffs were court security officers ("CSOs") employed by MVM, Inc., a private firm that had contracted with the United States Marshal Service ("USMS") to provide " 'qualified' " CSOs for court security purposes.  475 F.3d at 170-171.  The CSOs' employment was governed by a CBA which precluded their termination absent just cause.  Id.  The contract between MVM and the USMS required that all CSOs meet USMS medical qualifications, and reserved to USMS the right to modify those medical requirements as necessary. Id. at 171.  Following one such modification, the plaintiff CSOs were determined medically unqualified by the USMS. Id.  Because MVM had no alternative positions available in the district, plaintiffs were terminated from their employment with MVM for just cause. Id.  The plaintiff commenced an action against MVM and several federal defendants alleging, *inter alia*, procedural due process violations.  Id.  The district court dismissed the procedural due process claims on summary judgment on the grounds that plaintiff had no property interest in continued employment and that, even if they did, USMS had provided sufficient process. Id. at 172.

14

On appeal, the Third Circuit specifically relied on <u>Stein</u> in concluding that the plaintiffs there had a constitutionally protected interest in continued employment. <u>Wilson</u>, 475 F.3d at 177-178.  Summary judgment was nonetheless affirmed with respect to the federal defendants because the USMS provided sufficient due process.  <u>Id</u>. at 178. Specifically, the Third Circuit found that:

> After the [plaintiff CSOs] were termed medically disqualified, but before they were terminated, they were provided with notice of their medical disqualification and offered an opportunity to respond with medical documentation from their own doctors regarding their ability to perform their positions.  While this is not a traditional hearing, the process afforded the [plaintiff CSOs] is sufficient given the balance of their interest in maintaining employment and the government's interest in security.  A more rigorous process would not significantly enhance the accuracy of the medical qualification process.

<u>Wilson</u>, 475 F.3d at 179.  The Federal Defendants argue that, in light of the paucity of case law regarding what process is due to an employee of a private contractor prior to government officials rendering a decision that adversely affects that employment contract, it was objectively reasonable in light of <u>Wilson</u> for defendants to have provided Plaintiff only an opportunity to present documentary evidence in her defense rather than provide her a full adversarial hearing.

In considering this argument, this Court notes initially that Plaintiff's assertion that "no process was offered at all" is patently belied by the record.  (Pl's Mem. of Law in Opp'n at 9 (emphasis removed).)   As described by Plaintiff, she was called into a meeting on June 10, 2011, with Defendant Tryon and two Valley Metro supervisors, at which time she was asked whether she had been arrested. (Pl's Aff. ¶¶ 13-14; Tryon Aff. ¶¶ 11-13). Plaintiff answered that she had not been arrested, but that she had been given an appearance ticket in October 2010.  (Pl's Aff. ¶ 14; Tryon Aff. ¶¶ 13, 15). Plaintiff was

confronted with a copy of a Batavia Police Department "Arrest Report," (Tryon Aff. ¶ 14; compare Fed Def's St. Undisputed Facts ¶ 11, Docket No. 15, with Pl's St. Disputed Facts, Docket No. 24-3), which indicates that Plaintiff "was arrested by BPD on 10/09/2010 at approximately 2345 hours . . . for harassment 2nd . . . [and] was issued an appearance ticket." (Tryon Aff. Ex. 2).[3]  She was asked to give a description of her version of the events on October 9, 2010, and she described the altercation that she had with her nephew that led to police involvement.  (Pl's Aff. ¶ 15.)  Tryon asked one of the Valley Metro supervisors present at the meeting, although not the supervisor to whom Plaintiff asserts she reported the incident, if the supervisor was aware of the incident. (Pl's Aff. ¶ 17.)  The supervisor replied that he was not. (Pl's Aff. ¶ 17.)

Plaintiff admits that Tryon requested at that meeting submission of "every document [Plaintiff] had on the issue." (Pl's Aff. ¶ 19.)  By noon on the same day as the meeting, Plaintiff submitted several documents, including a letter from Batavia City Court confirming that the matter had been adjourned in contemplation of dismissal on October 12, 2010, copies of her cell phone records "substantiating that [she] had made and/or received calls from [her supervisor] Captain Lunn and the Facility on October 11 and 12, 2010," and a copy of an October 13, 2010 letter from her attorney to her in which counsel stated "[s]ince you appeared under an appearance ticket you can honestly state . . . that you have never been 'arrested.'" (Pl's Aff ¶¶ 5, 20 Exs. A-B).  Plaintiff even confirmed that ICE had this information in its records by way of a Freedom of Information Act request in October 2011.

---

[3]Although Plaintiff asserts that this Arrest Report was not included in the response to her FOIA request, she does not dispute that she was confronted with this document during the meeting with Defendant Tryon. (compare Fed Def's St. Undisputed Facts ¶ 11, Docket No. 15, with Pl's St. Disputed Facts, Docket No. 24-3; Pl. Aff. ¶ 22.)

(Pl's Aff. ¶ 21.)  Accordingly, Plaintiff was confronted with the allegations against her and had an opportunity to submit evidence that she asserts, and continues to assert, is dispositive of her argument that she was neither arrested nor failed to timely report the incident *prior* to Defendant Kim issuing the letter indicating ICE's determination that  it was "necessary that [Plaintiff] be permanently removed from working on this or any other ICE contract." (Compl. ¶¶ 9, 15, Ex. A; Pl. Aff. ¶¶ 20, 24.)[4]

There is some merit in Plaintiff's argument that <u>Wilson</u>, where only the plaintiffs' medical qualifications were at issue, is distinguishable from the instant case, which raises an issue of Plaintiff's veracity regarding the timely reporting the October 2010 incident. (Pl's Mem. of Law in Opp'n at 9).  Thus, <u>Wilson</u> and its progeny are not on all fours with the instant matter.[5]   <u>See also</u> <u>Int'l Union, United Gov't Sec. Officers of Am. v. Clark</u>, 706 F.Supp.2d 59, 69-70 (D.D.C. 2010)(noting that, in considering the issue of medical qualification, "there is less of a concern about witness credibility or reliability").  Indeed, it

---

[4]Plaintiff's union also grieved her termination pursuant to the governing CBA with Valley Metro, at which time Plaintiff submitted additional witness statements.  (<u>see</u> Compl. ¶¶ 19-20, Ex. B; Pl's Aff ¶ 25.)  Because it is not clear from this record whether the decision of ICE was or could have been reviewed in this proceeding, the Court will not consider it as part of the process afforded Plaintiff by the Federal Defendants.

[5] Nor do the cases discussed in <u>Stein</u> provide any further illumination.  In <u>Greene v. McElroy</u>, the Supreme Court held that "in the absence of explicit authorization from either the President or Congress [the Department of Defense was] not empowered to deprive petitioner[, whose private employer contracted with the military,] of his job in a proceeding in which he was not afforded the safeguards of confrontation and cross-examination." 360 U.S. 474, 508, 79 S.Ct. 1400, 1419-1420, 3 L.Ed.2d 1377 (1959); <u>see</u> <u>Stein</u>, 792 F.2d at 15 n.2.  The Court explicitly noted in that McCarthy-era case, however, that it was not deciding "[w]hether those procedures under the circumstances comport with the Constitution," and therefore <u>Greene</u> is not instructive here.  <u>Greene</u>, 360 U.S. at 508; <u>see</u> <u>Weber v. Merit Systems Protection Bd.</u>, 113 F.3d 1258,  1997 WL 244325 (Fed. Cir. 1997)(unpublished opinion), *cert denied* 522 U.S. 984 (1997)(recognizing limitation of the holding in <u>Greene</u>).  Similarly unhelpful here is <u>Cafeteria Workers v. McElroy</u>, which recognizes that a commanding officer was authorized by regulation to summarily exclude a civilian from a military base even where that civilian was employed by a private company contracted to provide services on that base. 367 U.S. 886, 891, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); <u>see</u> <u>Serrano Medina v. United States</u>, 709 F.2d 104, 108 (1st Cir. 1983)(noting that "due process jurisprudence has undergone significant changes since *Cafeteria Workers*").

is arguable that Plaintiff was entitled to more due process than that required by <u>Wilson</u>.

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

<u>Mathews v. Eldridge</u>, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).  The private interest, continued employment with a private contractor, and the governmental interest, ensuring security officers for government institutions are fit for service, are the same in <u>Wilson</u> as here.  It is the second factor which gives pause.  Although little more than the submission of medical records was necessary to resolve the question of the plaintiffs' medical qualification in <u>Wilson</u>, it is unclear whether "[a] more rigorous process would [have] significantly enhance[d] the accuracy of [ICE's decision making] process," <u>Wilson</u>, 475 F.3d at 179, and if so, what that more rigorous process would entail.

What is clear, however, is that these questions are not answered by clearly established laws.  <u>See</u> <u>Pearson</u>, 555 U.S. at 232. Resolution of this issue requires application of the balancing test found in <u>Matthews</u>.  "[W]hen the law requires a balancing of competing interests, it may be unfair to charge an official with knowledge of the law in the absence of a previously decided case with clearly analogous facts." <u>Borucki v. Ryan</u>, 827 F.2d 836, 848-49 (1st Cir. 1987)(citing <u>Davis v. Scherer</u>, 468 U.S. 183, 192-93 n. 10, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be

apparent." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)(internal citation omitted). In light of Wilson, the unlawfulness, if any, of the Federal Defendants' conduct was not apparent, therefore this Court concludes that the Federal Defendants are entitled to qualified immunity with respect to Plaintiff's Bivens claims for monetary damages.   Finally, although Plaintiff also seeks declaratory and injunctive relief in her complaint, including reinstatement, "[t]he only remedy available in a Bivens action is an award for monetary damages from defendants in their individual capacities."[6] Higazy v. Templeton, 505 F.3d 161, 169 (2d Cir. 2007); see Kurzberg v. Ashcroft, 619 F.3d 176, 179 n. 2 (2d Cir. 2010)(injunctive relief unavailable pursuant to Bivens); Polanco v. U.S. Drug Enforcement Admin., 158 F.3d 647, 650 (2d Cir. 1998)(claim for equitable relief rather than money damages improperly construed as a Bivens claim). The complaint is therefore dismissed in its entirety as against the Federal Defendants.

**D.     Valley Metro's Motion for Judgment on the Pleadings**

In her complaint, Plaintiff asserts causes of action against her former employer, Valley Metro, for defamation (third cause of action), intentional infliction of emotional distress (fourth cause of action), and negligent infliction of emotional distress (sixth cause

---

[6]Other circuits have relied on Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), in asserting that injunctive relief is an appropriate remedy in a Bivens action.  See Bunn v. Conley, 309 F.3d 1002, 1009 (7th Cir. 2002); Ross v. Meese, 818 F.2d 1132, 1134-35 (4th Cir. 1987).  In Farmer, however, although the Supreme Court remanded a purported Bivens action commenced pro se in which injunctive relief was sought, the Court neither expressly addressed the appropriateness of that remedy nor the fact that the action was commenced against several defendants only in their official capacities.  511 U.S. at 830, 850-851; see F.D.I.C. v. Meyer, 510 U.S. 471, 485, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)(the deterrent effect of a Bivens claim is based upon the imposition of monetary damages against an individual officer).  Further, a plaintiff suffering a legal wrong and "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority" may commence an action in district court against the United States pursuant to the Administrative Procedure Act. 5 U.S.C. § 702. Plaintiff has not asserted any such cause of action here.

of action).   Valley Metro argues that the Complaint must be dismissed as against it because, depending on the cause of action, Plaintiff has either failed to state a claim for relief or relief is precluded under New York law.  Plaintiff has not submitted any opposition to Valley Metro's motion, and it is unclear whether this is because Plaintiff is conceding the validity of the arguments raised therein or because her counsel failed to take note of Local Rule 7 (b)(2), which states that in the absence of a scheduling order by the Court, a party opposing a summary judgment motion has 28 days to file and serve responding papers.[7] In any event, Valley Metro has established its entitlement to dismissal of the Complaint as against it.

In determining whether judgment on the pleadings pursuant to Rule 12(c) is warranted, courts employ the same standard applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim.  L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 429 (2d Cir. 2011); Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009).  All factual allegations in the Complaint will be accepted as true and all reasonable inferences will be made in Plaintiffs' favor.  L-7 Designs, Inc., 647 F.3d at 429; Johnson, 569 F.3d at 43.  Thus, as set forth above, to survive Valley Metro's motion, Plaintiff's causes of action against that defendant must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its fact.' " Iqbal, 556 U.S. at 678; Johnson, 569 F.3d at 44.

Initially, Valley Metro is correct that Plaintiff has failed to state a claim for intentional infliction of emotional distress.  Under New York law, such a claim has four elements:

---

[7]Valley Metro's motion was filed on April 12, 2012.  In support of its motion, this defendant submitted a supporting Memorandum of Law, Statement of Undisputed Facts, the Declaration of Francisco Guerrero, and the Declaration of Captain John Lunn. (Docket No. 23)

> (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress. The first element—outrageous conduct—serves the dual function of filtering out petty and trivial complaints that do not belong in court, and assuring that plaintiff's claim of severe emotional distress is genuine.

Howell v. New York Post Co., 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702 (1993).  Here, Plaintiff's allegation that Valley Metro knowingly transmitted to ICE false information, specifically that she had been arrested, had committed criminal harassment, and/or failed to report that incident (Compl. ¶¶ 14, 33) is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Howell, 81 N.Y.2d at 122, 612 N.E.2d at 703 (internal quotation marks omitted); see Slatkin v. Lancer Litho Packaging Corp., 33 A.D.3d 421, 422, 822 N.Y.S.2d 507, 508 (1st Dep't 2006)(false statements to police of plaintiff's indebtedness to defendants not "so outrageous as to be utterly intolerable"); Como v. Riley, 287 A.D.2d 416, 416-17, 731 N.Y.S.2d 731, 731-732 (1st Dep't 2001)(false statement in email that plaintiff's cubicle contained statuette of a black man hanging from a white noose, while highly objectionable, was neither extreme nor outrageous); see also Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999)(issue of whether conduct is extreme and outrageous is a matter of law for the court to determine). Moreover, this cause of action is based on the same allegations underlying Plaintiff's defamation claim against Valley Metro, and therefore must be dismissed as duplicative. Akpinar v. Moran, 83 A.D.3d 458, 459, 922 N.Y.S.2d 8, 10 (1st Dep't. 2011), lv denied 17 N.Y.3d 707, 954 N.E.2d 89 (2011); Brancaleone v. Mesagna, 290 A.D.2d 467, 468-469, 736 N.Y.S.2d 685, 687 (2 Dep't 2002).

21

Plaintiff's claim for negligent infliction of emotional distress must similarly be dismissed for the failure to allege extreme and outrageous conduct. Sheila C. v. Povich, 11 A.D.3d 120, 130-131, 781 N.Y.S.2d 342, 351 (1st Dep't 2004).   Further, a claim of negligent infliction of emotional distress also requires an allegation that the defendant "breach[ed] . . . a duty owed to plaintiff which either unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety." Id. No such allegation appears here.   Finally, Plaintiff alleges that Valley Metro was her employer, therefore this claim, based on negligence, is barred by New York's Workers' Compensation Law. Kruger v. EMFT, LLC, 87 A.D.3d 717, 719, 930 N.Y.S.2d 11, 14 (2d Dep't 2011); see N.Y. Workers' Comp. Law § 11, 29 (6); Dansler-Hill v. Rochester Inst. of Tech., 764 F.Supp.2d 577, 585 (W.D.N.Y. 2011).

Accordingly, Valley Metro's Motion for Judgment on the Pleadings is granted with respect to Plaintiff's fourth and sixth causes of action.

## E.    Valley Metro's Motion for Summary Judgment

Valley Metro's last argument is that, although a private entity, it is nonetheless entitled to official, or absolute, immunity from liability on Plaintiff's tort claims because it relayed the information regarding Plaintiff in the course of performing a governmental function.   (Valley Metro's Mem of Law at 10-11, Docket No. 23-1.) This Court concludes that there are no genuine issues regarding any material fact on this issue, and that Valley Metro is entitled to judgment as a matter of law on the remaining defamation claim.   See Fed.R.Civ.P. 56 (a), (c); Celotex Corp., 477 U.S. at 322-323.

"[W]hen a private contractor, hired to perform a quintessential governmental function, in the course of its official duties conveys information with possible national

security implications to the agency charged with its oversight, that contractor is absolutely immune from state tort liability for claims resulting from that information-sharing." Murray v. Northrop Grumman Info. Tech., Inc., 444 F.3d 169, 175 (2d Cir. 2006).  This absolute immunity is provided in order to "insulate the decisionmaking process from the harassment of prospective litigation." Westfall v. Erwin, 484 U.S. 292, 295, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988).  Thus, a nongovernmental person or entity is entitled to official immunity from state tort liability for acts that are both discretionary in nature and fall within the scope of that entity's duty.[8]  Murray, 444 F.3d at 174.

This Court finds that Valley Metro, which provides detention officers to ICE for the purpose of monitoring, transporting, and controlling persons detained for being illegally in the United States, (see Aff. of Francisco Guerrero ¶ 3, Docket No. 23-3), is performing a governmental function. "[T]he detention of individuals charged with committing crimes is an exclusively governmental function. Only the government has the authority to imprison a person and the exclusive governmental nature of that function is not altered by the fact that, occasionally, the government may contract to have criminal defendants incarcerated at privately-operated institutions." Sarro v. Cornell Corr., 248 F.Supp.2d 52, 61 (D.R.I. 2003). Indeed, "[t]he function of incarcerating people, whether done publicly or privately, is the exclusive prerogative of the state." Giron v. Corr. Corp. of America, 14 F.Supp.2d 1245, 1249 (D.N.M.1998).

Further, pursuant to its contract with ICE, Valley Metro was obligated to provide,

---

[8]This two-step Westfall test, as it applies to federal employees, has been superceded by the Federal Employees Liability Reform and Tort Compensation Act.  Murray, 444 F.3d at 174.  The test, however, remains valid with respect to determining the immunity of private entities.  Id. (citing Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 72 (2d Cir. 1998)).

among other things, qualified detention officers for the Buffalo Federal Detention Center. (Guerrero Aff. ¶ 2.) This contract also requires that Valley Metro "report to ICE any conduct that might be characterized as 'immoral' or as constituting 'any other criminal offense.'" (Id. ¶ 9.)   Thus, as Valley Metro argues, it was within its discretion to determine what information regarding a detention officer's behavior was sufficiently immoral or criminal to warrant it being transmitted to ICE.   "[Valley Metro's] action in forwarding the information it received [regarding Plaintiff] to [ICE] is precisely the type of discretionary action that sound public policy requires to be protected by official immunity." Murray, 444 F.3d at 175. The threat of a suit resulting from disclosure of such information could deter companies like Valley Metro from sharing relevant information with ICE, negatively affecting that agency's ability to ensure the safe and secure administration of detention centers. See id. at 176.   Accordingly, this Court concludes that Valley Metro is entitled to official, or absolute, immunity in this action.

Finally, although not raised by Valley Metro, it appears on this record that this defendant is also entitled to qualified immunity from the defamation suit under New York law.   A "conditional, or qualified, privilege extends to a 'communication made by one person to another upon a subject in which both have an interest' " Liberman v. Gelstein, 80 N.Y.2d 429, 437, 605 N.E.2d 344, 349 (1992)(quoting Stillman v. Ford, 22 N.Y.2d 48, 53, 238 N.E.2d 304 (1968)).   Here, the fitness of detention officers employed by Valley Metro for federal detention centers operated under ICE's purview is certainly a subject in which these parties have a common interest.   Although Plaintiff may defeat a motion to dismiss based on the assertion of this qualified privilege by merely alleging, as she did, that Valley Metro knowingly transmitted false information, see Dunn v. Gelardi, 59 A.D.3d 385,

24

386, 872 N.Y.S.2d 528, 528-29 (2 Dep't 2009), in order to survive the summary judgment motion, Plaintiff is required to raise a triable question of fact whether Valley Metro "acted out of personal spite or ill will, with reckless disregard for the statements' truth or falsity, or with a high degree of belief that their statements were probably false." Cusimano v. United Health Servs. Hosps., 91 A.D.3d 1149, 1150, 937 N.Y.S.2d 413, 416 (3d Dep't 2012), *lv denied* 19 NY3d 801 (2012)(internal quotation marks omitted); Lerwick v. Krna, 29 A.D.3d 1206, 1208 (3d Dep't 2006), *lv denied* 7 N.Y.3d 712, 857 N.E.2d 1134 (2006). There is no evidence in this record from which to infer that Valley Metro personnel were either aware that the information was false or that they entertained serious doubts as to its truth. Indeed, Plaintiff does not dispute that she had an encounter with police that resulted in a court appearance to answer a harassment charge, only that she was ever 'arrested' as a result of a family dispute.   (Pl. Aff. ¶¶ 2, 9, 10, Ex. B.) Further, in light of Valley Metro's obligations under the contract with ICE, it cannot be concluded that malice was the sole motivation for transmitting the information regarding Plaintiff to ICE. See Lieberman, 80 N.Y.2d at 439 (noting that spite or ill will refers to the defendant's motivation in making the alleged defamatory statement, not his or her general feelings toward a plaintiff). Thus, even if Valley Metro was not entitled to official immunity, summary judgment dismissing the defamation claim would still be warranted.

## IV. CONCLUSION

For the reasons set forth above, the Complaint must be dismissed in its entirety against both the Federal Defendants and Valley Metro.

## V.  ORDERS

IT HEREBY IS ORDERED that the motion of the Federal Defendants to dismiss the

Complaint as against them (Docket No. 14) is GRANTED;

FURTHER, that the motion of Valley Metro to dismiss the Complaint as against it

(Docket No. 23) is also GRANTED, and the Complaint is dismissed in its entirety;

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.

Dated:   August 28, 2012
         Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
Chief Judge
United States District Court